**DeNITTIS OSEFCHEN PRINCE, P.C.**
Ross H. Schmierer, Esq. (RS-7215)
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
(856) 797-9951
rschmierer@denittislaw.com

*Attorneys for Plaintiff*

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq.
(*Pro Hac Vice* Application Forthcoming)
21550 Oxnard St., Ste 780
Woodland Hills, CA 91367
(877) 206-4741
TFriedman@toddflaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACLYN BAILEY, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>CVS Pharmacy, Inc.,<br><br>                    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>**PUTATIVE CLASS ACTION** |

## INTRODUCTION

1.        This is a proposed class action brought on behalf of a class of persons who have never received nor purchased a flu shot at a CVS pharmacy, but who nevertheless received a marketing text message from CVS relating to the sale of flu shots which stated **"Flu shots available,"** after placing an order for a prescription drug refill at a CVS pharmacy.

2.        As outlined in greater detail herein, during the class period, Defendant CVS established a program which CVS itself described to Plaintiff as having the sole purpose of sending her a text message from the CVS pharmacy, notifying her when the prescription drugs she had already ordered from CVS were ready for pick up (hereafter the "CVS Ready Text Program" or "the Program").

3.        Defendant pursued a uniform policy during the class period of soliciting class

members' cell phone numbers whenever they dropped off a drug prescription for refill, where, pursuant to CVS policy, CVS employees would tell them that the sole purpose of providing their cell phone number to CVS was so CVS could text them when their prescription drug order they had already placed at CVS pharmacy was ready for pick up.

4.      Despite this, Defendant pursued a uniform policy of sending each and every prescription drug customer who provided their cell phone number to CVS a uniformly-worded marketing text message advertising the sale and availability of flu shots, which bore the uniformly-worded message **"Flu shots available."**

5.      In describing the Program to Plaintiff and the class, CVS never revealed any intent to send Program participants any type of messages relating to flu shots or any type of telemarketing messages whatsoever.

6.      Thus, the scope of the consent given by Program participants such as Plaintiff was limited to receiving an informational, non-telemarketing message: notification of when the drug prescriptions which they had already asked CVS to fill were ready for pick up.

7.      No consent of any type was ever sought from, or given by, Plaintiff or the class – whether orally, in writing or otherwise – to receive any other type of message, including messages relating to flu shots, the sale of flu shots or any telemarketing messages of any kind.

8.      Despite this, CVS then appended a telemarketing message to each and every one of the text messages CVS sent to Plaintiff and the class – indeed, every Program participant – each one of which stated **"Flu shots available."**

9.      CVS's decision to send that telemarketing message to all Program participants was not limited to those persons who had previously purchased flu shots from CVS or by any other factor.

10. Rather, CVS sent out the text advertisement "Flu shots available" to all Program participants, without considering any individualized criteria relating to the text recipients whatsoever, and that no individualized determinations were made by CVS as to which Program members would be sent such texts.

11. The message was simply appended to each and every text sent by CVS to all class members, including Plaintiff, even though they were never asked to consent to the receipt of text advertisements relating to flu shots and they had never purchased or received a flu shot from CVS.

12. Based upon the foregoing, CVS violated the Telephone Consumer Protection Act ("TCPA") by performing a "bait and switch"; securing consent only for what CVS described as the limited informational purpose of notifying class members when the prescription drugs they had already ordered were ready for pick up and then sending out millions of texts containing the telemarketing message "Flu shots available," without receiving, or even seeking, any form of express consent – oral, written or otherwise – to receive such messages.

13. Rather, pursuant to Defendant's uniform policy, Defendant made a decision to send such text messages to all such customers, without exception, without even though Plaintiff and the proposed class had never previously received or purchased a flu shot at CVS.

14. Plaintiff brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of CVS Pharmacy, Inc. ("CVS" or "Defendant"), in transmitting unsolicited commercial text messages to Plaintiff and the class to their cellular telephones, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), thereby invading the privacy of Plaintiff and the class.

## JURISDICTION AND VENUE

15.     This Court has federal question jurisdiction because this case arises out of violations of the TCPA, a federal statute.

16.     Venue is proper in the United States District Court for the District of New Jersey pursuant to 18 U.S.C. § 1391(b) and 1441(a) because Defendant is subject to personal jurisdiction in the District of New Jersey, Plaintiff resides in the District of New Jersey, Defendant conducts business in the District of New Jersey and Defendant sent the marketing text message "Flu shots available" to recipients in, inter alia, New Jersey, including the text sent to Plaintiff.

## PARTIES

17.     Plaintiff Bailey is, and at all times mentioned herein was, a citizen and resident of the State of New Jersey. Plaintiff Bailey is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (10). Like all proposed class members, Plaintiff Bailey has never purchased or received a flu shot at CVS, has never gave consent in any form to receive text marketing messages from CVS, and was never asked by CVS in any manner to give such consent in any form. Nevertheless, like all proposed class members, Plaintiff received a text message from CVS during the class period which stated **"Flu shots available."**

18.     Defendant is, and at all times mentioned herein was, a foreign corporation duly organized under the laws of the State of Rhode Island with its principal place of business in the State of Rhode Island. Defendant, is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (10). CVS is the second largest pharmacy chain in the United States, with more than 7,600 stores, and is the second largest U.S. pharmacy based on total prescription revenue. At all times relevant herein, Defendant conducted business in the State of New Jersey and within this judicial district.

## SUMMARY OF THE TCPA AND ITS IMPLEMENTING REGULATIONS

19.     Congress enacted the TCPA because **"many consumers are outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes."** <u>Mims v. Arrow Fin. Servs.</u>, 132 S. Ct. 740, 745 (2012).

20.     Congress found that such calls were a greater nuisance and invasion of privacy than live solicitation calls.  Pub. L. No. 102-243, § 2 (Dec. 20, 1991), codified at 47 U.S.C. § 227. **"Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls.  The Act [thus] bans certain practices invasive of privacy and directs the Federal Communications Commission (FCC) to prescribe implementing regulations."** <u>Mims</u>, 132 S. Ct. at 743.

21.     The TCPA makes it unlawful to place any calls or send any texts to cellular phones through the use of an automatic telephone dialing system ("ATDS"), unless the call or text is made for **"emergency purposes"** or the caller obtains the **"prior express consent"** of the called party before making the call.  47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

22.     For telemarketing messages sent via text, the prior express consent must be in writing and that writing must contain specific language and conform to specific procedures set forth in 47 C.F.R. § 64.1200(a)(2) and 47 C.F.R. § 64.1200(f)(8).

23.     Even where the requirement for written consent does not apply, however, prior express consent must be proven – either orally or through conduct – before ATDS messages are sent. <u>See</u> 47 C.F.R. §64.1200(a)(1)(iii).

24.     Under the TCPA, the party sending a telemarketing messages has the burden of proof on the issue of whether it obtained the required express consent prior to sending that message. <u>See</u> <u>Daubert v. NRA Grp., LLC</u>, 861 F.3d 382, 390 (3d Cir. 2017). <u>See</u> <u>also</u> <u>In re Rules</u>

& Regulations Implementing the [TCPA] of 1991, 30 F.C.C.R. 7961, 8031 146 ("2015 FCC

Order") at ¶47, where the FCC ruled with regard to the TCPA:

> **"we emphasize that regardless of the means by which a caller obtains consent, under longstanding Commission precedent, if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the caller to prove that it obtained the necessary prior express consent."**

25.     The implementing regulations for the TCPA promulgated by the FCC precisely

define **"telemarketing"** and **"advertisement"** for purposes of interpreting that statute.

26.     The term **"telemarketing"** is defined as **"the initiation of a telephone call or

message for the purpose of encouraging the purchase or rental of, or investment in, property,

goods, or services, which is transmitted to any person."** 47 C.F.R. § 64.1200(f)(12).

27.     The term **"advertisement"** is defined as **"any material advertising the

commercial availability or quality of any property, goods, or services."** 47 C.F.R. §

64.1200(f)(1) (emphasis added).

28.     In 2012, the FCC imposed strict requirements on **"telemarketing"** robocalls by

requiring **"prior express written consent for all telephone calls using an [ATDS] or a

prerecorded voice to deliver a telemarketing message to wireless numbers and residential

lines."** In re Rules & Regulations Implementing the [TCPA] of 1991, 27 F.C.C.R. 1830, 1838,

¶20 (Feb. 15, 2012) ("2012 FCC Order").

29.     The FCC noted that because **"the TCPA is silent on the issue of what form of

express consent – oral, written, or some other kind – is required for calls that use an

automatic telephone dialing system or prerecorded voice to deliver a telemarketing

message,"** the FCC has **"discretion to determine, consistent with Congressional intent, the

form of express consent required"** for telemarketing calls. Id. at § 21.

30.     In the same order, the FCC noted that it had authority to create an exemption for calls to residential lines, but only for calls that **"do not include an unsolicited advertisement."** Id. at ¶ 60.

31.     The 2012 FCC Order's prior express written consent requirement is codified at 47 C.F.R. § 64.1200(a)(2).   Under that regulation, where the call **"includes or introduces an advertisement or constitutes telemarketing,"** the called party must have given their **"prior express written consent."** 47 C.F.R. § 64.1200(a)(2).

32.     Prior express written consent is defined by 47 C.F.R. § 64.1200(f)(8) as:

> **"an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisement or telemarketing messages to be delivered."**

33.     Moreover, whether the consent in question is oral or written, it is well-established under the TCPA that "consent" to receive text messages for a non-telemarking purpose cannot be construed as valid consent to receive telemarketing messages.

34.     Indeed, courts have repeatedly held that consent to receive non-telemarketing, informational calls or texts which would otherwise be exempt from the TCPA telemarketing rules cannot be stretched to constitute consent to receive messages which are beyond the scope of the consent sought and given. See e.g., Kolinek v. Walgreen Co., No. 13 C 48067, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2014) **("the scope of a consumer's consent depends on its context and the purpose for which it is given.  Consent of one purpose does not equate to consent for all purposes.").**

35.     The FCC has also repeatedly ruled that consent given in response to a stated limited purpose is not sufficient under the TCPA to constitute consent to receive marketing messages

unrelated to that purpose for which consent was never even sought. See 2012 FCC Order at ¶25:

**"One commenter...appears to suggest that oral consent is sufficient to permit any autodialed or prerecorded calls to wireless numbers. It argues that its customers may orally provide their wireless phone number as a point of contact and therefore those customers expect marketing and service calls. We disagree. <u>Consumers who provide a wireless phone number for a limited purpose – for service calls only – do not necessarily expect to receive telemarketing calls that go beyond the limited purpose for which oral consent regarding service calls may have been granted</u>." (emphasis added)**

36.     The TCPA regulations provide an exemption from the prior express written consent requirement – but not for the express consent requirement – for **"call[s] that deliver[] a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate.'"** 47 C.F.R. § 64.1200(a)(2).

37.     The FCC has recognized that because the statutory language of the TCPA itself barred unsolicited advertisements, the FCC regulatory exemption for **"health care messages"** cannot cover a message intended to solicit the purchase of goods and services, even if some part of the message related to health care. See 2012 FCC Order at ¶63, defining exempt **"health care message"** as being **"intended to communicate health care related information rather than to offer property, goods, or services."** See also 2012 FCC Order at ¶63 n.195: **"Because these health care-related calls' intent and purpose concern consumers' health, not the purchase of a good or service, as required by the definition of advertisement, we believe that these calls are not advertisements."**

38.     In 2015, the FCC offered additional guidance to clarify the scope of the **"health care message"** exemption for calls to cellular telephones, imposing an "exigency" requirement on

such messages.  See 2015 FCC Order at ¶146, defining the TCPA exemption for **"health care calls"** as: **"We grant the exemption, with the conditions below, but restrict it to calls for which there is exigency and that have a healthcare treatment purpose…"**

39.     The FCC was well aware that creating an exemption to the TCPA for **"health care messages"** would tempt some merchants to try to make an end-run around the TCPA and its regulations by mixing together some content that related to health care treatment with telemarketing and/or advertising messages designed to sell products or services.

40.     For this reason, in interpreting the requested exemption from the prior express written consent requirement for **"health care calls"** to cellular telephones, the 2015 FCC Order made clear that the mere fact that the message was related in some way to health or health care is not enough to qualify for the exemption; rather, the message must meet some very specific requirements and the calls must also not include any type of telemarketing or advertising. See e.g., 2015 FCC Order at ¶146: **"We therefore grant the exemption for calls subject to HIPAA, but limit this exemption by excluding any calls contained therein that include telemarketing, solicitation, or advertising content, or which include accounting, billing, debt collection, or other financial content." (emphasis added).**

41.     The TCPA also exempts autodialed and/or prerecorded calls to cellular phones where the calls are **"made for emergency purposes."**  47 U.S.C. § 227(b)(1)(A).

42.     The FCC has made clear, however, that this exemption requires exigency and that this exemption cannot be applied to messages which are telemarketing or advertising messages. See In re Rules & Regulations Implementing the [TCPA] of 1991, 7 F.C.C.R. 8752, 8778, ¶51 n.85 (**"We emphasize that telephone solicitations as defined in our rules can never be classified as 'emergencies.'"**).

43.     It is well-established that reviewing courts **"must give substantial deference to an agency's interpretation of its own regulations."** Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994). See also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984) (holding that it has been **"long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer"**).

44.     With regard to the FCC regulations and final orders interpreting the TCPA, the courts within the Third Circuit, including the District of New Jersey, have repeatedly deferred to both FCC promulgated regulations and FCC interpretations embodied in final administrative orders. See e.g., Dobkin v. Enter. Fin. Grp., No. 2:14-cv-01989 (WHW)(CLW)(Judge Walls), 2014 U.S. Dist. LEXIS 123317, at *7 (D.N.J. Sep. 3, 2014) (**"The FCC's interpretation of its regulations implementing the TCPA merits substantial deference."**); Morse v. Allied Interstate, LLC, 65 F. Supp. 3d 407, 411-12 (M.D. Pa. 2014) (deferring to FCC administrative orders interpreting the TCPA, holding that the Hobbs Act, 28 U.S.C. §§ 2341-2351, expressly grants federal courts of appeals exclusive jurisdiction to set aside final orders of the FCC and stating **"district courts cannot determine the validity of FCC orders."**). See also Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110 (11th Cir. 2014) (deferring to FCC ruling interpreting TCPA, stating: **"The 2008 FCC Ruling thus has the force of law and is an order reviewable under the Hobbs Act in the court of appeals."**

## THE UNIFORM POLICIES OF DEFENDANT
## WHICH GIVE RISE TO THE CAUSE OF ACTION

45.     At all times relevant hereto, Defendant conducted business in New Jersey and within this judicial district.

46.     During the class period, Defendant CVS established and continuously operated the

CVS Ready Program, which CVS itself described to Plaintiff as having the sole purpose of sending them a text message from the CVS pharmacy, notifying them when the prescription drugs they had already ordered from CVS were ready for pick up.

47.     In describing the Program to Plaintiff, CVS never revealed any intent to send Program participants any type of messages relating to flu shots or any type of telemarketing messages whatsoever.

48.     Thus, the scope of the consent given by Program participants such as Plaintiff was limited to receiving an informational, non-telemarketing message: notification of when the drug prescriptions which they had already asked CVS to fill were ready for pick up.

49.     No consent of any type was ever sought from, or given by, Plaintiff or the class – whether orally, in writing or otherwise – to receive any other type of message, including messages relating to flu shots, the sale of flu shots or any telemarketing messages of any kind.

50.     Despite this, CVS then appended a telemarketing message to each and every one of the text messages CVS sent to Plaintiff and the class – indeed, every Program participant – each one of which stated **"Flu shots available."**

51.     The decision to send that telemarketing message to all Program participants was not limited to those persons who had previously purchased flu shots from CVS or by any other person-specific factor.

52.     Rather, as a matter of uniform policy, CVS sent out the text advertisement **"Flu shots available"** to all Program participants, without considering any individualized, person-specific criteria relating to the text recipients whatsoever, and no individualized, person-specific determinations were made by CVS as to which Program members would be sent such texts.

53.     The message was simply appended to each and every text sent by CVS to all

Program participants, including Plaintiff and the class.

54.     Nor is there any question that CVS understood the text message "Flu shots available" to be a telemarketing message under the TCPA.

55.     Not only does the TCPA, the governing regulations and the FCC rulings make this abundantly clear, but CVS itself specifically told its own employees that texts offering flu shots for sale are telemarketing messages covered by the TCPA, rather than merely "informational" messages.

56.     Pursuant to the uniform policy described above, CVS violated the TCPA by essentially performing a "bait and switch"; securing consent only for what CVS described as the limited informational purpose of notifying Program participants when the prescription drugs they had already ordered were ready for pick up and then sending out millions of texts containing the telemarketing message "Flu Shots Available," without receiving, or even seeking, any form of express consent – oral, written or otherwise – to receive such messages.

57.     Indeed, pursuant to a deliberate uniform policy, Defendant instructed its employees to tell class members that the sole purpose of asking for their cell phone numbers was so that CVS could notify them via text when the prescription drug refills they had already ordered were ready for pick up.

58.     This uniform policy can also be seen in CVS's own written description of the Program, which CVS posted on its own website, which stated during the class period:

> **"What is CVS/pharmacy Text Messaging Program? CVS/pharmacy Text Messaging is a service for enrolled pharmacy customers to receive text alerts to notify them that a prescription order is ready for pick up." (emphasis added)**

59.     That CVS website also stated during the class period:

> **"Enrollment in this service requires providing a mobile phone number and agreeing to these terms and conditions. Before the service will start, you will need to verify the mobile phone number by responding to a text message to your mobile phone that affirms your choice to opt in to this service. Note that in affirming this message, you acknowledge that _notices about your prescriptions_, which may include some limited protected health information, <u>will be sent to the number you provide</u> and whoever had access to that mobile phone or carrier account will be able to see this information. Once you affirm your choice to opt in to this service, Message Frequency will depend on account settings. _You will receive a message each time one of your prescriptions is ready for pick up_. Message and data rates apply. Customers will be allowed to opt out of this program at any time." (emphasis added)**

60.     As a matter of uniform policy during the class period, CVS never told consumers in any manner that CVS would send texts to participants in the Program about any CVS products or services, or that such texts will contain advertising content relating to the sale of any products or services, including flu shots.

61.     As a matter of uniform policy during the class period, participants in the Program, including Plaintiff and the class, were not asked to sign or otherwise give their express consent to receive any texts from CVS which advertised the sale or availability of any CVS products or services.

62.     Indeed, during the class period, it was CVS's deliberate, uniform policy to specifically refrain from asking Program participants, including Plaintiff and the class, to give consent in any form to the receipt of texts from CVS which advertised any CVS products or services, including flu shots.

63.     Despite this, as a matter of uniform policy, CVS sent uniformly-worded text messages to all participants in the Program, including those such as Plaintiff and the class who had never purchased or received a flu shot at CVS, a uniformly-worded text message which said **"Flu**

**shots available."**

64.     CVS offers flu shots for sale at approximately $25 each.

65.     The text messages sent by CVS to Plaintiff and the class were clearly advertising and telemarketing messages relating to the sale of flu shots.

66.     The implementing regulations for the TCPA promulgated by the FCC precisely define "telemarketing" and "advertisement" for purposes of interpreting that statute.

67.     **"Telemarketing"** is defined as **"the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."** 47 C.F.R. § 64.1200(f)(12).   The term **"advertisement"** is defined as **"any material advertising the commercial availability or quality of any property, goods, or services."** 47 C.F.R. § 64.1200(f)(1) (emphasis added).

68.     Defendant's three word message "Flu Shots Available" consisted of the name of the product – "Flu Shots" – and the fact that it was "Available" at CVS.

69.     That three word message was utterly divorced from any other information whatsoever relating to flu shots.

70.     This includes, but is not limited to, no information regarding the benefits of flu shots, no information as to how often flu shots are recommended, no information regarding who is and who is not medically recommended to receive flu shots, no information as to whether there are some categories of persons for whom flu shots are not medically recommended, and/or no information about the circumstances when flu shots might or might not be medically recommended or beneficial.

71.     The three word message "Flu Shots Available" is thus clearly an "advertisement" within the meaning of 47 C.F.R. § 64.1200(f)(1). See P & S Printing LLC v. Tubelite, Inc., No.

3:14-cv-1441 (VAB), 2015 WL 4425793, at *4 (D. Conn. July 17, 2015) (finding that **"to constitute an advertisement under the TCPA, the document does not need to make an 'overt sales pitch' so long as it 'promotes the commercial availability of the Defendant's goods or services.'"**).

72.     In addition, Defendant's message **"Flu shots available"** was also a "telemarketing" message within the meaning of 47 C.F.R. § 64.1200(f)(12).

73.     At least one purpose of this message – indeed the only purpose a reasonable reader could attach to it – was plainly to encourage the purchase of a flu shot from CVS.

74.     There is simply no informational content whatsoever to the three word message beyond the fact that CVS has "Flu shots available" for sale.

75.     That purpose is underscored by the fact that CVS collects well over $100 million annually from the sale of flu shots, with the revenues generated by flu shot sales at CVS growing thousands of times faster than the growth rate for CVS pharmacy sales of other products and services.

76.     To the extent that the texts at issue included other information unrelated to the sale of flu shots, this does not place the message "Flu shots available" outside the definition of a telemarketing message and advertisement.

77.     It is sufficient under the TCPA that one purpose of the text was to encourage the purchase of goods and/or services: a flu shot.

78.     This is particularly true where, as here, Plaintiff and the class had never previously purchased or received a flu shot at CVS and the portion of the text that was purely informational – notification that the prescription drugs the customer had already ordered from CVS were ready for pick up – had no logical or legal connection to flu shots.

79.     Indeed, CVS has advised its own employees that text messages advertising the availability of flu shots to persons who had never previously received or purchased a flu shot at CVS – i.e., Plaintiff and the class – were telemarketing messages covered by the TCPA, rather than merely "informational" messages outside the scope of the TCPA.

80.     As outlined in detail above, Defendant's policy of sending the text message **"Flu shots available"** to such persons legally required the prior consent of the recipients to the receipt of such telemarketing messages; something which, as a matter of uniform policy, CVS never obtained or even asked for.

81.     What happened to the named Plaintiff illustrates Defendant's uniform policies as described herein.

82.     On November 24, 2014, Plaintiff visited the CVS pharmacy located at 246 Norwood Avenue, in Oakhurst, New Jersey, for the purpose of having a drug prescription filled.

83.     During the ordering process, as per CVS instructions to its employees and pursuant to the CVS uniform policy described previously, the CVS employee asked Plaintiff to provide her cell phone for a specific purpose, which CVS described as receiving a text for notifying her when the prescription drug order she had just placed to be filled was ready for pick up.

84.     In describing that purpose to Plaintiff, the CVS employee was acting pursuant to the express written instructions of CVS to describe the purpose of providing the cell phone number was because CVS wanted to text Plaintiff a notification informing her when her drug prescription was ready for pick up.

85.     Based on CVS's description of that limited purpose, Plaintiff provided her cell phone number.

86.     Plaintiff never gave any consent – whether oral, written or through conduct – to

receive any messages regarding flu shots or the sale of flu shots, or for any other purpose other than the very limited purpose described by CVS above.

87.     Nor was Plaintiff ever asked in any manner to give such consent.

88.     Absolutely nothing was ever said to Plaintiff by CVS in any manner about CVS sending text messages regarding the sale of flu shots or any other product or service.

89.     Nor had Plaintiff ever purchased or received a flu shot at CVS.

90.     Despite the foregoing, Plaintiff was subsequently sent a text message by CVS on November 24, 2014 which stated, inter alia, "Flu shots available." See Attachment A.

91.     The consent given by Plaintiff to receive a text notification advising her when the prescription drug refill she had already ordered was ready for pick up did not, as a matter of law and fact, amount to consent to receive text advertisements for flu shots.

92.     It is clear as a matter of law that a consumer who gives consent to receive texts containing certain specified content has not given blanket consent to receive texts advertising other services or products. See Kolinek v. Walgreen Co., 2014 U.S. Dist. LEXIS 91554, 10-11, (N.D. Ill. July 7, 2014), holding that pharmacy customers who gave consent to receive texts from a pharmacy for identity verification purposes had their rights under the TCPA violated when the pharmacy sent them unsolicited text messages about prescription refills, stating:

> **"The FCC has established no general rule that if a consumer gives his cellular phone number to a business, she has in effect given permission to be called at that number for any reason at all, absent instructions to the contrary. Rather, to the extent the FCC's orders establish a rule, it is <u>that the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes</u>." (emphasis added)**

93.     Nor can the mere fact that a customer provided a cell phone number for one specified, non-telemarketing purpose be stretched to cover consent to receive telemarketing

messages about a product which that customer has never previously purchased from the sender. See Carlson v. Nev. Eye Care Professionals, 2013 U.S. Dist. LEXIS 75357, 12-13, 2013 WL 2319143 (D. Nev. May 28, 2013) (**"Nor does the Court accept the argument that simply providing one's telephone number equates to consent to be called for any purpose. The purpose of the TCPA is to prevent unsolicited marketing calls. A patient providing a telephone number to a health care provider only impliedly consents to be contacted for reasons related to particular care the patient has received or solicited, not for general marketing purposes."**)

94.     The text message sent to Plaintiff's cellular telephone described herein was sent via an **"automatic telephone dialing system,"** as defined by 47 U.S.C. § 227 (a)(1) and as prohibited by 47 U.S.C. § 227 (b)(1)(A).

95.     The telephone number to which Defendant, or its agent, sent its unsolicited text message relating to the sale of flu shots was assigned to a cellular telephone service for which Plaintiff incurred a charge pursuant to 47 U.S.C. § 227 (b)(1).

96.     The unsolicited text message **"Flu shots Available"** was made for general marketing purposes.

97.     Plaintiff never previously purchased a flu shot from Defendant, did not express any desire or interest in purchasing a flu shot and did not consent to receiving texts regarding flu shots.

98.     The text message sent to Plaintiff which said **"Flu shots available"** did not constitute the conveyance of medical information in that, inter alia, this text message was a "boilerplate" commercial text message which was inserted by Defendant into Defendant's texts to all participants in the Program, without regard to any individualized factors being

considered or any person-specific determinations being made, and was not individually tailored to Plaintiff.

99.     Moreover, the text message **"Flu shots available"** contained no reference to any past treatment, appointments, or any reference to any particular doctor or office location and it was not a follow up message relating to any treatment Plaintiff had requested or received.

100.    Nor was there any exigent circumstances or emergency which could have lead CVS to believe Plaintiff had an exigent or emergent need for a flu shot.

101.    This type of marketing text message is not the conveyance of medical or emergent information, but rather was exactly the type of unsolicited marketing text the TCPA was designed to prevent. See Carlson v. Nev. Eye Care Professionals, 2013 U.S. Dist. LEXIS 75357, 9 at n.1 (D. Nev. May 28, 2013), holding that a text message sent to a customer by an eye care professional violated the TCPA because it was a marketing message not related to prior treatment, stating:

> **"The emphasized text is important, because the alleged call in this case does not appear to be related to any previous care. <u>That is, it is not a follow-up message but a message soliciting Plaintiffs' business in general</u>: '[Y]our eye doctor . . . wants to improve your eyes. Please call . . . for an app[ointmen]t.' <u>The message contains no reference to any past treatment, appointments, or condition, or even any reference to any particular doctor or office location</u>. (emphasis added)**

102.    The general marketing commercial text relating to the sale of flu shots which was sent to Plaintiff and the class was not sent for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i) and was strikingly similar to the one found to violate the TCPA in Carlson.

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this action under Fed.R.Civ.P. 23 on behalf of a proposed class defined as:

> **All persons to whom CVS sent a text message between September 1, 2014 and February 28, 2015, which contained the words "Flu shots available," who had never purchased or received a flu shot at CVS.**

104.   Plaintiff also bring this action as a sub-class under Fed.R.Civ.P. 23 on behalf of proposed sub-class defined as:

> **All persons to whom CVS sent a text message between September 1, 2014 and February 28, 2015, which contained the words "Flu shots available," where CVS obtained the customer's cell phone number at the point of purchase while the customer was ordering a prescription drug refill, and the customer had never purchased or received a flu shot at CVS.**

105.   The class and sub-class for whose benefit this action is brought are each so numerous that joinder of all members is impracticable.

106.   The exact number and identities of the persons who fit within the proposed class and sub-class are each ascertainable in that Defendant maintains written and electronically stored data showing the name and address of each class member, records showing all texts sent to such persons by CVS and all other data needed to identify the class and sub-class.

107.   The proposed class and sub-class is each composed of over 10,000 persons.

108.   The claims in this action arise exclusively from Defendant's uniform policies as alleged herein, from uniformly-worded form documents prepared by Defendant and uniformly-worded texts sent via an "automatic telephone dialing system."

109.   No violations alleged are a result of any oral communications or individualized interaction between any class member and Defendant.

110.   There are common questions of law and fact affecting the rights of the class members, including, <u>inter alia</u>, the following:

> a) **Whether consenting to receive text messages about when one's drug prescription is ready for pick up constitutes giving express consent under the TCPA to receive texts containing advertising**

20

information about flu shots sold by CVS;

b) **Whether sending texts which stated "Flu Shots Available" constituted the sending of a telemarketing and/or advertising text message within the meaning of the TCPA;**

c) **Whether Defendant's uniform policies and common course of conduct, as alleged herein existed;**

d) **Whether Defendant's uniform policies and common course of conduct, as alleged herein, violated the TCPA; and**

e) **Whether Plaintiff and the class are entitled to a statutory award of damages under the TCPA and other relief.**

111.   Plaintiff is a member of the class and sub-class she seeks to represent in that she received a text message from CVS during the class period, she never purchased or received a flu shot at CVS, and she provided her cell phone number to CVS at the point of purchase while ordering a prescription drug refill after being told that the purpose of providing her number was to allow CVS to notify her when these drugs were ready for pick up.

112.   The claims of Plaintiff are not only typical of all class members, they are identical in that they arise from Defendant's uniform policies and form documents, and are based on the same legal theories of all class members.

113.   Plaintiff has no interest antagonistic to, or in conflict with, the class or sub-class.

114.   Plaintiff will thoroughly and adequately protect the interests of the classes, having retained qualified and competent legal counsel to represent them and the classes.

115.   Defendant has acted and refused to act on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

116.   The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

117.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, <u>inter alia</u>, the damages suffered by each class member were less than $1,500 per person and individual actions to recoup such an amount are not economically feasible.

118.    Common questions will predominate, and there will be no unusual manageability issues.

## COUNT I

### NEGLIGENT VIOLATIONS OF THE TCPA 47 U.S.C. § 227 ET SEQ.

119.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

120.    The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, et seq.

121.    As a result of Defendant's negligent violations of 47 U.S.C. § 227, et seq., Plaintiff and the class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

## COUNT II

### KNOWING AND/OR WILLFUL VIOLATIONS
### OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227, ET SEQ.

122.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

123.    The foregoing acts and omissions of Defendant constitute numerous and multiple  knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, et seq.

124.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, et seq., Plaintiff and the class are entitled to an award of $1,500.00 in statutory damages, for each  and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff and members of the class respectfully pray for the following relief:

A.  Certification of the class and sub-class under Fed.R.Civ.P. 23;

B.  On the First Count, as a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(2)(D), Plaintiff and each member of the Class is entitled to and requests five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

C.  On the Second Count, as a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(2)(D), Plaintiff and each member of the Class is entitled to and  requests treble  damages,  as  provided  by  statute,  up  to  one  thousand  five  hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

D.  Attorney's fees and costs; and

E.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: November 9, 2017

**DeNITTIS OSEFCHEN PRINCE, P.C.**

By:   s/ Ross H. Schmierer
      Ross H. Schmierer, Esq.
      525 Route 73 North, Suite 410
      Marlton, New Jersey 08053
      Tel: (856) 797-9951
      Fax:  (856) 797-9978
      rschmierer@denittislaw.com

**LAW OFFICES OF TODD M.
FRIEDMAN, P.C.**
Todd M. Friedman, Esq.
(*Pro Hac Vice* Application Forthcoming)
21550 Oxnard St., Ste 780
Woodland Hills, CA 91367
Tel:  (877) 206-4741
Fax:  (866) 633-0228
TFriedman@toddflaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding, other than Marcus, et al. v. CVS Pharmacy, Inc., Case No.: 3:15-CV-00259-PGS-LHG.

Dated: November 9, 2017                    **DeNITTIS OSEFCHEN PRINCE, P.C.**

                              By:    s/ Ross H. Schmierer
                                     Ross H. Schmierer, Esq.
                                     525 Route 73 North, Suite 410
                                     Marlton, New Jersey 08053
                                     Tel: (856) 797-9951
                                     Fax:  (856) 797-9978
                                     rschmierer@denittislaw.com

                                     **LAW OFFICES OF TODD M.
                                     FRIEDMAN, P.C.**
                                     Todd M. Friedman, Esq.
                                     (*Pro Hac Vice* Application Forthcoming)
                                     21550 Oxnard St., Ste 780
                                     Woodland Hills, CA 91367
                                     Tel:  (877) 206-4741
                                     Fax:  (866) 633-0228
                                     TFriedman@toddflaw.com

                                     *Attorneys for Plaintiff*

# Attachment A

Nov 24, 2014, 9:10 AM

CVS/pharmacy: JACLYN, your order is ready at 246 NORWOOD AVE.. Flu shots available. Questions? 732-502-3154 Reply HELP for Help