UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACLYN BAILEY, | Civil Action No: |
| *Plaintiff,* | 17-cv-11482 (PGS)(LHG) |
| v. | |
| CVS PHARMACY, INC., | **MEMORANDUM AND ORDER** |
| *Defendant.* | |

This matter comes before the Court on Defendant CVS Pharmacy, Inc.'s (hereinafter, "CVS") Motion to Dismiss Plaintiff Jaclyn Bailey's Complaint and Motion to Strike Plaintiff's Class Allegations. (ECF Nos. 11, 16). In her Complaint, Plaintiff alleges CVS violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et. seq.*, based on sending text messages notifying recipients of the availability of flu shots. For the reasons set forth herein, CVS's motion to dismiss is granted, and motion to strike denied as moot.

### Background

At its core, this case about three words: "Flu shots available." In this putative class action, Plaintiff Jaclyn Bailey alleges that CVS has violated the TCPA, and brings this action on behalf of herself and other CVS customers who, during the 2014-15 flu season, received a text message notifying them that their prescription was ready for pickup and, in the middle of the message, included those three words.

By way of background, CVS operates retail pharmacies nationwide that provide various healthcare services, including influenza vaccinations. (Complaint at ¶ 18). During the class period, CVS established and maintained a text messaging program, "CVS Ready Text Program," which

1

notified patients who enrolled in the program that their prescription was ready for pickup. (*Id.* at ¶ 2). To sign up, customers simply provided their phone numbers to a CVS employee and their information would be saved into the program; no formal paperwork was required. (*Id.* at ¶¶ 2-3). The terms and conditions of the program were made available in stores and on CVS's website. (*Id.* at ¶¶ 58, 59). According to the Complaint, CVS posted a description of the Program, which stated:

> What is CVS/pharmacy Text Messaging Program? CVS/pharmacy Text Messaging is a service for enrolled pharmacy customers to receive text alerts to notify them that a prescription order is ready for pick up.

(*Id.* at ¶ 58). The website also provided the following terms and conditions:

> Enrollment in this service requires providing a mobile phone number and agreeing to these terms and conditions. Before the service will start, you will need to verify the mobile phone number by responding to a text message to your mobile phone that affirms your choice to opt in to this service. Note that in affirming this message, you acknowledge that notices about your prescriptions, which may include some limited protected health information, will be sent to the number you provide and whoever had access to that mobile phone or carrier account will be able to see this information. Once you affirm your choice to opt in to this service, Message Frequency will depend on account settings. You will receive a message each time one of your prescriptions is ready for pick up. Message and data rates apply. Customers will be allowed to opt out of this program at any time.

(*Id.* at ¶ 59). It should be noted that CVS contends there is an older version of the Terms and Conditions which ceased operation in November 2014. (Defendant's Brief in Support at 6 n.3). The terms are essentially the same, except that the Terms and Condition in November 2014 also state: "to stop receiving text alerts, text STOP to CVSTXT (287898)." (ECF No. 11-2 at 4, "November 2014 Terms and Conditions.").

On November 24, 2014, Plaintiff visited a CVS pharmacy in Oakhurst, New Jersey, for purposes of having a drug prescription filled. (*Id.* at ¶ 82). While preparing her prescription, a CVS employee asked Plaintiff for her phone number, so that she could receive text messages notifying her when her prescription was ready for pickup. (*Id.* at ¶¶ 83-84). Plaintiff provided the

employee with her number. (*Id.* at ¶ 85). This being said, Plaintiff avers that she "never gave any consent – whether oral, written or through conduct – to receive any messages regarding flu shots or the sale of flu shots, or for any other purpose other than the very limited purpose described by CVS." (*Id.* at ¶ 86). In any event, upon providing the CVS employee her phone number, she received the following text message, which purportedly gives rise to this action:

> CVS/pharmacy: JACLYN, your order is ready at 246 NORWOOD AVE.. *Flu shots available*. Questions? 732-502-3154 Reply HELP for Help

(*Id.* at ¶ 90; Attachment A) (emphasis added). Plaintiff claims that she never received a flu shot from CVS, nor did she express an interest in obtaining the same when she enrolled in the CVS Ready Text Program. (*Id.* at ¶ 97). Besides this one message, Plaintiff does not claim to have received any other messages from CVS, which contain the "Flu shots available" language.

Plaintiff claims the message received above constitutes negligent and willful violations of Section 227 of the TCPA and seeks to bring this action on behalf of herself and similarly situated individuals. The proposed class is defined as:

> All persons to whom CVS sent a text message between September 1, 2014 and February 28, 2015, which contained the words "Flu shot available," who had never purchased or received a flu shot at CVS

(*Id.* at ¶ 103). She also seeks to bring on behalf of a sub-class, which she defines as:

> All persons to whom CVS sent a text message between September 1, 2014 and February 28, 2015, which contained the words "Flu shot available," where CVS obtained the customer's cell phone number at the point of purchase while the customer was ordering a prescription drug refill, and the customer had never purchased or received a flu shot at CVS.

(*Id.* at ¶ 104).

## LEGAL STANDARDS

I. Rule 12(b)(1) Subject Matter Jurisdiction

Under Federal Rules of Civil Procedure 12(b)(1) a claim can be dismissed for "lack of jurisdiction over the subject matter." This motion to dismiss may be asserted at any time in a case. *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). In a motion to dismiss based on subject matter jurisdiction, "the standard . . . is much more demanding [than the standard under 12(b)(6)]." 'When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.'" *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

If the defendant's attack is facial, the court may take all allegations in the complaint as true and "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Liu v. Gonzales*, No. 07-1797, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007). The standard of review differs substantially when the challenge is factual. Then, there is no presumption of truthfulness to a plaintiff's claims in the complaint. *RLR Invs., LLC v. Town of Kearny*, No. 06-4257, 2007 U.S. Dist. LEXIS 44703, at *8 (D.N.J. June 20, 2007) (citations omitted).

Thus, consideration of the motion does not have to be limited; conflicting evidence may be considered so that the court can decide factual issues that may bear on its jurisdiction. *Id.* Furthermore, "[w]hen resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)). However, "[w]here an attack on jurisdiction implicates the merits of plaintiff's

[f]ederal cause of action, the district court's role in judging the facts may be more limited." *RLR Invs., LLC*, 2007 U.S. Dist. LEXIS 44703, at *9 (internal citations omitted).

II. Rule 12(b)(6) Failure to State a Claim

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000).

ANALYSIS

**I. Lack of Standing**

As an initial matter, CVS asserts that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiff has not established standing to warrant federal court jurisdiction. Specifically, CVS claims that Plaintiff has failed to allege any concrete injury, since she gave express consent to receive the text message. In response, Plaintiff contends that CVS's argument is directly in conflict with the Third Circuit's recent decision in

*Susinno v. Work Out World, Inc*, 862 F.3d 346 (3d Cir. 2017), which recognizes that a cause of action under the TCPA is essentially an intangible injury.

Here, the Court finds Defendant's Rule 12(b)(1) arguments unpersuasive, since the present cause of action arises under a federal statute. Moreover, the Third Circuit in *Susinno*, 862 F.3d at 351, expressly held that a concrete injury has been pled when the complaint asserts "the very harm that Congress sought to prevent." *Id.* (internal quotation marks and citation omitted). Here, the Complaint is predicated on receiving unsolicited text messages from an automatic telephone dialing system that fell beyond the scope of Plaintiff's consent, which is "prototypical conduct proscribed by the TCPA." *Id.*; *see also* 47 U.S.C. § 227 (b)(1)(C). As such, the Court will not dismiss Plaintiff's claim based on lack of standing pursuant Federal Rule 12(b)(1); therefore, the Court next considers whether Plaintiff states a claim upon which relief may be granted.

## II. Failure to State a Claim

CVS next contends that dismissal is warranted since its "Flu shot available" message falls within the "Healthcare Exemption" set forth under 47 C.F.R. § 64.1200; as such, Plaintiff is not entitled to relief. Plaintiff responds, contending that the "flu shots available" text message does not fall within any exemption, since the message did not involve healthcare and she did not provide express consent. The Court briefly discusses the legal framework of the TCPA, before addressing the parties' substantive arguments.

*1. The TCPA and Healthcare Exemptions*

"Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013). "The TCPA provides consumers with a private right of action for certain prohibited uses of automated

telephone equipment." *Susinno*, 862 F.3d at 348 (citing 47 U.S.C. § 227(b)(3)). Notably, the TCPA makes it unlawful for any person:

> to make any call (*other than a call made for emergency purposes* or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). This prohibition also applies to text messages. *See Gager*, 727 F.3d at 269 n.2; *see also Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946, 952 (9th Cir. 2009) ("a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

However, the TCPA also recognizes several circumstances where prerecorded communications or messages will not be in violation of the Act. First, calls made for "emergency purposes" are not subject to the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(iii). "The FCC has defined 'emergency purposes' to mean 'calls made necessary in any situation affecting the health and safety of consumers.'" *Zani v. Rite Aid Headquarters Corp.*, 246 F. Supp. 3d 835, 843 (S.D.N.Y. 2017) (citing 47 C.F.R. § 64.1200(f)(4)). "Second, the FCC may exempt certain calls to cell phones from the restrictions under the Act, provided that the calls 'are not charged to the called party.'" *Id.* (citing 47 U.S.C. § 227(b)(2)(C)). Finally, calls made "with prior express consent of the called party" do not violate the TCPA. *Id.* (citing 47 U.S.C. § 227(b)(1)(A)(iii)).

Notably, under certain circumstances, the FCC exempts the written consent requirement for health care messages, this has been referred to as the "Healthcare Exemption." Under the Healthcare Exemption, "[t]he FCC exempts from written consent calls to wireless cell numbers if the call 'delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those are defined in the HIPAA Privacy Rule.'" *Latner v. Mount Sinai*

7

*Health Sys.*, 879 F.3d 52, 54-55 (2d Cir. 2018) (citing 47 C.F.R. § 64.1200(a)(3)(v)). "HIPAA defines health care to include 'care, services, or supplies related to the health of an individual.'" *Id.* (quoting 45 C.F.R. § 160.103).

In 2015, the FCC created what has been called the "Exigent Healthcare Treatment Exemption," which is "a safe harbor from the consent requirement for certain 'exigent' calls to wireless telephone numbers that have a 'healthcare treatment purpose' and 'are not charged to the called party.'" *Jackson v. Safeway, Inc.*, No. 15-4419, 2016 U.S. Dist. LEXIS 140763, at *10 (N.D. Cal. Oct. 11, 2016) (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8030-31 ¶¶ 143, 146 (July 10, 2015) (hereinafter, "2015 Order")). "The FCC limited the exemption to many types of calls: [including]. . . "prescription notifications, and home healthcare instructions." *Id.* at *11 (citing 2015 Order 30 FCC Rcd. at 8030-31 ¶¶ 143, 146). Additionally, to be exempt from TCPA liability, the message must satisfy the following requirements:

> 1) voice calls and text messages must be sent, if at all, only to the wireless telephone number provided by the patient;
>
> 2) voice calls and text messages must state the name and contact information of the healthcare provider (for voice calls, these disclosures would need to be made at the beginning of the call);
>
> 3) voice calls and text messages are strictly limited to the purposes permitted in para. 146 above; must not include any telemarketing, solicitation, or advertising; may not include accounting, billing, debt-collection, or other financial content; and must comply with HIPAA privacy rules ;
>
> 4) voice calls and text messages must be concise, generally one minute or less in length for voice calls and 160 characters or less in length for text messages;
>
> 5) a healthcare provider may initiate only one message (whether by voice call or text message) per day, up to a maximum of three voice calls or text messages combined per week from a specific healthcare provider;

6) a healthcare provider must offer recipients within each message an easy means to opt out of future such messages, voice calls that could be answered by a live person must include an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the call recipient to make an opt-out request prior to terminating the call, voice calls that could be answered by an answering machine or voice mail service must include a toll-free number that the consumer can call to opt out of future healthcare calls, text messages must inform recipients of the ability to opt out by replying "STOP," which will be the exclusive means by which consumers may opt out of such messages; and,

7) a healthcare provider must honor the opt-out requests immediately.

*Id.* at *11-12 (citing 2015 Order at 8032 ¶ 147).

*2. The Healthcare Exemption*

CVS contends that its "Flu shots available" text message constituted a "healthcare message" under 47 C.F.R. § 64.1200(a)(2) and, therefore, is exempt from liability under the TCPA. Additionally, CVS argues that even if the text messages were considered telemarketing, it nevertheless obtained Plaintiffs' express consent to receive these text messages, thereby eliminating TCPA liability. "[T]o qualify for the less demanding consent requirements of the Health Care Rule, an automated call must 'deliver a health care message made by, or on behalf of, a covered entity or its business associate." *Zani*, 246 F. Supp. 3d at 847 (citing 47 C.F.R. § 64.1200(a)(2)).

First, the Court must consider whether the text messages at issue were sent by an entity covered by the Healthcare Exemption. *See* 47 C.F.R. § 64.1200(a)(2). Here, the record clearly demonstrates, and Plaintiff does not contest, that CVS falls within the covered entities under the Healthcare Exemption. CVS, as a pharmacy, constitutes a healthcare provider. *See Zani*, 246 F. Supp. 3d at 848; *see also Jackson*, 2016 U.S. Dist. LEXIS 140763, at *22-23. The Court next considers whether the text messages conveyed a "health care message."

In order for the text message to constitute a health care message, the text message must "deliver a health care message" as the term is defined under HIPAA regulations. *Zani*, 246 F. Supp. 3d at 849 (quoting 47 C.F.R. § 64.1200(a)(2)). Under HIPPA, "health care" is defined as:

> [C]are, services, or supplies related to the health of an individual. Health care includes, but is not limited to, the following:
>
> (1) Preventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body; and
>
> (2) Sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription.

45 C.F.R. § 160.103. Here, Plaintiff contends that the word "individual" illustrates HIPAA's intention that such healthcare messages be directed to particular individuals, not generic or mass-produced messages.[1]

Several recent cases appear to control. The cases of *Latner*, *Zani* and *Jackson* hold that a generic flu shot reminder does not violate the TCPA, as they fall within the Healthcare Exemption. *See, Jackson*, 2016 U.S. Dist. LEXIS 140763, at *26 (citing 45 C.F.R. § 160.103); *Zani*, 246 F. Supp. 3d at 851

In *Zani*, the Court identified three distinct factors that should be considered, in determining whether the Healthcare Exemption applies: (1) "if such a call concerns a product or service that is inarguably health-related"; (2) "if such a call is made by or on behalf of a health care provider to

---

[1] Plaintiff also relies on the FCC's decision in *Kohll's Pharmacy and Homecare, Inc.*, 31 FCC Rcd. 13289, 13292-93 (Dec. 21, 2016), which held that faxes concerning the availability of flu shots fell outside the healthcare exemption. However, as noted above, the Healthcare Exemption extends to cell phone calls and text messages, not *faxes*; as such, Plaintiff's reliance on *Kohll's* is misplaced. *See Zani v. Rite Aid Headquarters Corp.*, No. 17-1230, 2018 U.S. App. LEXIS 4354, at *8 (2d Cir. Feb. 21, 2018).

10

a patient with whom she has an established health care treatment relationship"; and (3) "if the call concerns the individual health care needs of the patient recipient." *Id.*

Here, all three factors are present. First, a flu shot is health related. Second, the text messages were limited only to CVS customers who enrolled or consented to the CVS Ready Text Program. Finally, these messages were prepared in the course of notifying Plaintiff of the status of her order. As such, the Court is satisfied that these messages meet the three prong *Zani* standard.

The Court also notes that the message at issue here is far less invasive or intrusive than the messages involved in *Zani* and *Jackson*. In both of those cases, the plaintiffs received unsolicited phone calls from pharmacies, which left approximately minute-long messages on the plaintiffs' voicemails, to notify them that flu shots were now available. Here, Plaintiff received a three word notice that was included within a message notifying her of the status of her prescription order, which, as will be discussed next, Plaintiff consented to.

Finally, the Court considers whether Plaintiff provided express consent to receive the flu messages from CVS. As noted above, under the Healthcare Exemption, an entity need only receive express consent, not written, to escape TCPA liability. "On the issue of consent, the FCC has clarified 'that provision of a phone number to a healthcare provider constitutes prior express consent for healthcare calls . . . if the covered entities and business associates are making calls within the scope of the consent given, and absent instructions to the contrary.'" *Jackson*, 2016 U.S. Dist. LEXIS 140763, at *30 (citing 2015 Order, 30 FCC Rcd. at 8029 ¶ 141). The FCC has explained that "within the scope of the consent given" means that calls or messages must be closely related to the initial purpose for which consent was provided. *Id.* However, courts that have addressed this "scope of consent" issue have understood the "closely related" requirement to be

satisfied "so long as the call bears some relation to the reason for which the number was originally provided." *Id.* at *32-33 (collecting cases).

Here, it is undisputed that Plaintiff provided her phone number to CVS for purposes of enrolling in the CVS Ready Text Program. However, Plaintiff contends that providing her phone number did not constitute express consent and, even if it did, the "Flu shots available," message fell beyond the scope of consent.

To the contrary, "Persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given." 2015 Order, 30 FCC Rcd. at 7990 ¶ 49 (internal quotation marks omitted). As such, courts have held that express consent can be established where an individual provides an entity with his or her phone number, for purposes of receiving calls thereafter. *See Reardon v. Uber Techs, Inc.*, 115 F. Supp. 3d 1090, 1098 (N.D. Cal. 2015); *Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 418 (E.D.N.Y. 2013). Therefore, since Plaintiff provided her phone numbers for purposes of enrolling in the CVS Ready Text Program, express consent had been granted.

Plaintiff's argument that the text messages fall beyond the scope of consent is unavailing. Plaintiff seeks to construe the scope of consent narrowly; however, courts that have addressed the scope of consent issue have used a broad approach, one far broader than Plaintiff's narrow scope. Generally, the "TCPA does not require that a call be made for the exact purpose for which the number was provided, but it undoubtedly requires that the call bear some relation to the product or service for which the number was provided." *Olney v. Job.Com, Inc.*, No. 12-1724, 2014 U.S. Dist. LEXIS 60843, at *22 (E.D. Cal. May 1, 2014). Therefore, so long as the call or message "closely relate[s] to the circumstances under which plaintiff provided his cell phone number," it will fall within the scope of consent. *Aderhold v. car2go N.A., LLC*, No. 13-489, 2014 U.S. Dist.

LEXIS 26320, at *24 (W.D. Wash. Feb. 27, 2014). Here, the Court is satisfied that CVS's "flu shot available message" closely relates to the scope of Plaintiffs' express consent, as it notified Plaintiffs of the availability of prescription services.

A recent analogous case is *Latner v. Mount Sinai Health Sys.*, 879 F.3d 52 (2018). In *Latner*, the issue was whether a hospital's flu shot text reminder violated the TCPA. Evidently, in 2003, the plaintiff had visited West Park Medical Group ("WPMG") for a routine health exam and signed a form that "granted consent to Mt. Sinai to use his information 'for payment, treatment and hospital operations purposes.'" *Id.* at 53. In June 2011, Mt. Sinai hired a third party to send mass messages on Mt. Sinai's behalf, which included flu shot reminder text messages for WPMG. *Id.* Three years later, September 2014, Plaintiff received the following message from WPMG:

> Its flu season again. Your PCP at WPMG is thinking of you! Please call us at 212-247-8100 to schedule an appointment for a flu shot. (212-247-8100, WPMG).

*Id.* at 54. In affirming the district court's dismissal, the Second Circuit concluded that: (1) "the text message delivered a health care message made by, or on behalf of, a covered entity or its business associate"; and (2) by providing his phone number and signing various privacy notices, he "provided his prior express consent to receiving a single text message about a 'health-related benefit[]' that might have been of interest to him." *Id.* at 55

In sum, the Court finds that: (1) CVS is a covered entity under the Healthcare Exemption; (2) CVS's "Flu shot available" message conveyed a "health care" message; and (3) CVS had Plaintiff's prior express consent when it sent the message. Therefore, because the Healthcare Exemption applies, CVS's motion to dismiss is granted.[2] Since the Healthcare Exemption is applicable, any amendment would be futile.

---

[2] Because the Court finds the Healthcare Exemption applicable, we offer no opinion on the applicability of the Exigent Healthcare Treatment Exception.

## Order

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 14th day of August, 2018,

ORDERED that Defendants' Motion to Dismiss (ECF No. 11) is GRANTED; and it is further

ORDERED that Defendant's Motion to Strike Class Allegations (ECF No. 16) is DENIED as moot; and it is further

ORDERED that the Clerk is directed to close the case.

PETER G. SHERIDAN, U.S.D.J.